IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY SLUSHER, an individual,
KARIN SLUSHER, an individual,

       Plaintiffs,

  v.

DITECH FINANCIAL, LLC,
a Foreign Corporation,

       Defendant.

No. 3:18-cv-00034-HZ

OPINION & ORDER

James R. Dowell
THE DOWELL LAW FIRM
3201 Maple Ave., Ste. 450
Dallas, Texas 75201

    Attorney for Plaintiff

William G. Fig
Elizabeth A. Semler
SUSSMAN SHANK LLP
1000 S.W. Broadway, Suite 1400
Portland, Oregon 97205

    Attorneys for Defendant

1 - OPINION & ORDER

HERNANDEZ, District Judge:

Plaintiffs Jeffrey and Karin Slusher bring this action against Defendant Ditech Financial, contending that a mortgage payoff statement issued by Defendant contained erroneous charges which "caused the termination of" an initial sale of the mortgaged property. Compl. ¶ 9, ECF 1-1 at 3-9. Plaintiffs contend that Defendant breached contractual obligations and the implied duty of good faith and fair dealing by issuing the allegedly incorrect payoff statement and by refusing to retract the allegedly erroneous charges. *Id.* ¶¶ 12-22. They further contend that the payoff statement errors amounted to fraudulent material misrepresentations supporting a claim of common law fraud. *Id.* ¶¶ 31-34. Finally, they allege that Defendant violated the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2610 (RESPA), by making a negative credit agency report following Plaintiffs' dispute resolution request and thereby injuring Plaintiffs' credit. *Id.* ¶¶ 23-30.

Defendant moves for summary judgment on all claims. I grant the motion.

BACKGROUND

In the Complaint, Plaintiffs allege that they owned residential property in Creswell Oregon ("the Morse Property"). *Id.* ¶ 1. In late 2014, Defendant initiated foreclosure proceedings against the Morse Property. Semler Decl., Ex. 1 ("J. Slusher Dep.") 29:25-30:22[1]. However, in early October 2015, Plaintiffs entered into a Loan Modification Agreement with Defendant related to the Morse Property mortgage which terminated the foreclosure. Compl. ¶ 2;

---

[1] Excerpts from Jeffrey Slusher's Deposition are attached to the June 14, 2018 Elisabeth Semler Declaration, ECF 10-1, as well as to the July 5, 2018 Jeffrey Slusher Declaration, ECF 13-1. Citations to pages attached to the Semler Declaration are cited as "J. Slusher Dep." Citations to pages attached to the Slusher Declaration are cited as "J. Slusher Dep.-Decl."

J. Slusher Dep. 32:21-23

In the summer of 2017, Plaintiffs listed the Morse Property for sale for $240,000, and shortly thereafter received an offer to purchase the property. *Id.* ¶ 4; J. Slusher Dep. 16:10–17; J. Slusher Dep.-Decl. 12:6-14:1. The buyers entered into an earnest money agreement. J. Slusher Dep. 14:21-15:3. In response to a request by the escrow agent, Defendant generated a payoff statement on September 7, 2017, showing a payoff amount of $174,106.01. Compl. ¶ 4; Compl., Ex. 2, ECF 1-1 at 16-17. That amount included "Corporate Advances" of $1,559.73 and $332.10 in late fees. *Id.;* Compl., Ex. 2. It also showed $2,456.51 in escrow funds and a principal balance of $171,830.89. *Id.*; Compl., Ex. 2. According to Jeffrey Slusher, Plaintiffs would have received $36,015.06 in proceeds based on the $235,000 sale price and amounts payable to Defendant. J. Slusher Dep. 16:10-17:11.

According to Plaintiffs, since the October 2015 Loan Modification Agreement, all monthly payments had been made through September 2017 and no late fees had appeared on any monthly online statement. *Id.* ¶ 4[2]. Additionally, since the Loan Modification Agreement, the Morse Property had not been in judicial or non-judicial foreclosure proceedings. *Id.* ¶ 5.

In "September and October of 2017," Plaintiffs contacted Defendant about the payoff statement and then made a formal dispute resolution request. *Id.* ¶ 7; *see also* J. Slusher Decl. ¶ 4 (stating that from September 2017 through November 2017, he contested and had communications with Defendant regarding the allegedly incorrect payoff amounts). In the factual background section of the Complaint, Plaintiffs do not assert the exact date of this formal dispute

---

[2] The Complaint contains two paragraphs numbered "4." This allegation is in the second of those two paragraphs.

request. However, in support of their RESPA claim, they allege that they invoked formal dispute resolution procedures on October 6, 2017. Compl. ¶ 25.

In a September 20, 2017 letter from Defendant to Plaintiff, presumably sent in response to one of Plaintiffs' communications, Defendant provided a breakdown of the corporate advances shown in the payoff statement. Compl., Ex. 3, ECF 1-1 at 18-19. For the period before October 4, 2015, when the Loan Modification Agreement was executed, the information shows three sets of charges and corresponding payments on those charges. *Id.* (charges and payments through Jan. 6, 2014). In September 2017, $3,205.02 was added for charges related to an escrow deficiency, "escrow unbilled," and past due escrow. *Id.* These were paid on October 7, 2015, just three days after the Loan Modification Agreement was executed. *Id.* Thus, as of October 7, 2015, there were no "Corporate Advance" fees owing. *Id.*

On October 20, 2015, the account was charged $2,228.25 for "Court Costs," "Attorney Fees," "Trustee Sale," and "Trustee Fee." *Id.* However, the account was credited on three separate dates with payments toward those charges. *Id.* (showing $170.88 credit on Dec. 9, 2015; $341.76 credit on Jan. 8, 2016; and $170.88 credit on Mar. 11, 2016). The $2,228.25 amount charged on October 20, 2015 less the total $683.52 credited, left a balance of $1,544.73. On May 1, 2017, the account was charged $15 for an inspection, making the total "Corporate Advance" fees owing $1,559.73, the amount shown on the September 7, 2017 payoff statement. *Id.*

Plaintiffs allege that on November 11, 2017, they received Defendant's November 2, 2017 response to their dispute communication in which Defendant again demanded the same amounts as stated in the September 7, 2017 payoff request. Compl. ¶ 8. Plaintiffs allege that Defendant's

"refusal to make adjustments to the payoff amount requested . . . caused the termination of the initial sale of the Morse Property." *Id.* ¶ 9. Plaintiffs re-listed the property for sale. *Id.*; J. Slusher Dep. 39:6-17. Plaintiffs sold the home in mid-November 2017 for $245,000 and paid Defendant the disputed payoff amount. *Id.* ¶ 11; J. Slusher Dep. 40:13-22. Plaintiffs received $47,464.73 from the proceeds of the sale.[3] J. Slusher Dep. 42:22-43:18. Plaintiffs filed this lawsuit approximately one month later.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the

---

[3] Defendant asserts that it paid Plaintiffs an additional $917.40 post-closing. Def.'s Mot. For Sum. J. 3, ECF 9. In support, Defendant cites to Slusher's deposition testimony as well as to Deposition Exhibit 22. The cited portion of the deposition testimony does not mention the $917.40 payment and none of the deposition exhibits, which Defendant repeatedly cites to, are in the record.

5 - OPINION & ORDER

pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

DISCUSSION

I. Breach of Contract Claim

To establish a breach of contract claim under Oregon law, a plaintiff must show: (1) the existence of a contract; (2) its relevant terms; (3) the plaintiff's full performance and lack of breach; and (4) the defendant's breach resulting in damage to the plaintiff. *Schmelzer v. Wells Fargo Home Mortg.*, No. CV-10-1445-HZ, 2011 WL 5873058, at *4 (D. Or. Nov. 21, 2011) (citing *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570-71, 927 P.2d 1098, 1101 (1996)).

Defendant argues that Plaintiffs' breach of contract claim fails as a matter of law because Plaintiffs do not and cannot identify any provision in the Loan Modification Agreement that Defendant actually breached. Defendant contends it was allowed to assess fees related to the

2014 foreclosure and Plaintiffs fail to show that the September 2017 payoff statement was incorrect. Defendant argues that in his deposition, Jeffrey Slusher admitted that the reason the Morse Property did not sell to the first buyers was because Plaintiffs disputed the amount shown on the payoff statement. This, according to Defendant, shows that Defendant did not cause the initial sale to fail. Finally, Defendant argues that even assuming the payoff statement was incorrect, Plaintiffs can prove no damages as a result.

In response, Plaintiffs submit a three-paragraph Response Memorandum which contains irrelevant facts, no substantive argument, no case citations or discussion, and no citations to any particular evidence. Pls.' Resp. Mem. ¶¶ 1-3, ECF 12. The Response refers to ownership interests in the "surface tract and corresponding subsurface oil and gas minerals found at issue," which are not at issue here. *Id.* ¶ 1. It asserts that it and the "Attached Documentation provide[] at a minimum a scintilla of evidence in support of Plaintiffs' claims, thereby creating genuine issues of material fact per the requirements of Federal Rule of Civil Procedure 56." *Id.* ¶ 2. Plaintiffs assert that because their Response "specifically details evidence" in support of their claims which creates genuine issues of fact, Defendant's motion should be denied. *Id.* ¶ 3. But, given that these three paragraphs comprise the entirety of the Response Memorandum, the Response Memorandum itself does *not* "specifically detail evidence."

The Response Memorandum is inadequate and unhelpful to the Court. It fails to address any of the legal standards and the evidence supporting any claim. While Plaintiffs submit a Declaration, a few exhibits, and excerpts from Jeffrey Slusher's deposition, without an explanation as to which particular piece of evidence creates an issue of fact as to which element

of which claim, Plaintiffs unnecessarily burden the Court. The Court has no duty to make a represented party's legal arguments and has no duty to search through the record to find relevant evidence. *See Simmons v. Navajo Cty.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (courts have "no independent duty to scour the record" in search of genuine issues of fact) (internal quotation marks omitted); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (internal quotation marks omitted).

Even though Plaintiffs' failure to respond to the summary judgment motion in a meaningful way supports granting Defendant's motion, I have nonetheless reviewed the evidence Plaintiffs submit. I agree with Defendants that Plaintiffs' breach of contract claim fails. Even assuming that the September 7, 2017 payoff statement included erroneous charges and that this breached terms of the loan agreement, Plaintiffs fail to show that any erroneous amounts caused Plaintiffs any damage.[4]

---

[4] Plaintiffs fail to cite to any provision of the original deed of trust, promissory note, or the Loan Modification Agreement as the basis for their breach of contract claim and thus, they fail to show that the allegedly erroneous payoff statement implicated an express provision of the governing contract.

As to whether the charges were actually erroneous, Jeffrey Slusher himself appears not to have understood the corporate advances as explained in Defendant's September 20, 2017 letter. When asked about the letter with its breakdown of those charges, he could not explain what the numbers in brackets meant other than "[p]ossibly no charge." J. Slusher Dep.-Decl. 34:11-15. He stated that he had not looked at the detailed corporate advances to determine whether the balance reflected the positive and no-charged items. *Id.* at 34:16-19; *see also id.* at 28:14-29:5 (stating that he did not understand what corporate advances are and did not understand the use of the word "advance" in counsel's question asking about the corporate advances on the payoff statement). He failed to understand, therefore, that as of October 7, 2015, there were no outstanding corporate advances and that other than the May 17, 2017 $15 inspection fee, all items in brackets following the October 20, 2015 assessments for court costs, attorney fees, trustee sale, and trustee fee, were actually credits to Plaintiffs' account. Jeffrey Slusher could not

In their Complaint, Plaintiffs allege that as a result of Defendant's alleged breach of contractual terms, they suffered economic damages in the amount of $71,765.53, plus attorney's fees related to pursuing the underlying dispute and this litigation. Compl. ¶ 16. At deposition, Jeffrey Slusher was unable to identify how he calculated that amount. J. Slusher Dep. 45:1-6 ("I don't have the list how I came up with the - that dollar amount. I don't remember what – how I calculated it."). The record is far from clear as to how a dispute over $15,000 - $17,000 of allegedly inaccurate charges on the payoff statement caused Plaintiffs more than $70,000 in damages. *See* J. Slusher Dep. 21:1-9 (stating payoff statement showing amount of proceeds to buyer was $15,000 - $17,000 short). In his Declaration, Jeffrey Slusher states that "as noted in my April 18, 2018 deposition testimony,"[5] he suffered economic damages when the first sale fell through by incurring payments to Defendant for September through November 2017. J. Slusher Decl. ¶ 7. Presumably, Jeffrey Slusher means the principal and interest payments on the loan that he made for those months as a result of the failed sale to the first buyers. But, he still fails to explain how that sum (approximately $3,300 based on the Loan Modification Agreement

---

provide a basis for contending that any operative contract prevented Defendant from assessing fees related to the 2015 foreclosure proceeding which was terminated upon execution of the Loan Modification Agreement on October 4, 2015. All he could say was that he believed the balance of corporate advance fees was incorrect as shown on the payoff statement because he was not notified of them. J. Slusher Dep.-Decl. 34:20-35:1. When asked to identify any loan document he signed that obligated Defendant to provide notice of these charges, he responded that he "believe[d]" that "if you're going to charge a customer a fee . . . I should see it on my statement." *Id.* at 35:2-7; *see also id.* at 36:14-18 (agreeing that "fundamentally," his position was that because he "did not receive specific notice of the charges, [Defendant] is not entitled to recover them[.]"). Finally, Jeffrey Slusher admits that Plaintiffs were late in making their mortgage payments from November 2016 to August 2017. *Id.* at 44:12-25. The evidence fairly suggests that the corporate advances and late fees were not erroneous charges.

[5] Plaintiffs provide no citation to a page and line.

showing an approximate $1,100 total monthly payment for principal, interest, and escrow), supports a claim for over $70,000 in damages.

At deposition, Jeffrey Slusher explained that there was an earnest money agreement with the first buyers and the house had passed inspection. J. Slusher Dep. 14:21-15:3, 17:22-25. As noted above, after receiving the payoff statement, Plaintiffs contacted Defendant to request more information about the allegedly erroneous charges. According to Jeffrey Slusher, Plaintiffs then asked the first buyers to wait three weeks to allow Plaintiffs to receive documents back from Defendant regarding the disputed payoff amounts. *Id.* at 19:12-13. Jeffrey Slusher states that when documents from Defendant did not arrive within that three-week period, the first buyers did not want to wait any longer. *Id.* at 19:13-15. Jeffrey Slusher conceded, however, that the first buyers did not insist on having the information from Defendant in order to close on the sale. *Id.* at 19:22-24. Instead, Plaintiffs needed that information. *Id.* at 19:25-20:1. As Jeffrey Slusher explained, "the buyer had nothing to do with [Defendant]." *Id.* at 20:17-22.

No reasonable juror could conclude that Defendant's allegedly erroneous payoff statement caused the sale of the Morse Property to the first buyers to fall through. Plaintiffs had a dispute with Defendant. But that dispute did not affect the first buyers or the purchase price. J. Slusher Dep. 20:17-19. Plaintiffs are the ones who requested that the first buyers wait three weeks. The first buyers apparently were ready to proceed to closing. Plaintiffs chose to stall the sale so they could resolve their dispute with Defendant but, as can be seen from the fact that Plaintiffs consummated the sale to the second buyers despite still disputing the amounts on the payoff statement, the dispute between Plaintiffs and Defendant did not impede a sale. Plaintiffs could

have timely closed the sale with the first buyers and then continued to dispute the charges with Defendant because only Plaintiffs and Defendant were impacted by that dispute. Finally, the record undisputably shows that Plaintiffs realized more on the second sale than they would have if the first sale had gone through.[6]

Plaintiffs fail to support their request for more than $70,000 in damages on the breach of contract claim with any evidence showing the basis for the amount claimed, and more importantly, with any evidence showing that Defendant's allegedly erroneous payoff statement caused the first sale to fail or that the failure of that sale was damaging when they sold the Morse Property to the second buyer for more than the offer from the first buyers. Defendant is entitled to summary judgment on the breach of contract claim.

## II. Breach of the Duty of Good Faith & Fair Dealing

Under Oregon law, "there is 'a duty of good faith and fair dealing with respect to all contracts to facilitate performance and enforcement of the contract where it is consistent with and in furtherance of the agreed-upon terms of the contract or where it effectuates the reasonable contractual expectations of the parties.'" *Veloz v. Foremost Ins. Co. Grand Rapids, Michigan*, 306 F. Supp. 3d 1271, 1280 (D. Or. 2018) (quoting *Swenson v. Legacy Health* Sys., 169 Or. App. 546, 554-55, 9 P.3d 145, 149 (2000)).

In support of this claim, Plaintiffs incorporate their prior allegations and then allege that

---

[6] Jeffrey Slusher's contention that he lost the value of three months' of payments to Defendant because the sale occurred in November instead of September is counter to common sense. These payments for principal, interest, and escrow would have been credited to his account, thus reducing his liability at closing. The larger amount he received at the closing with the second buyers presumably reflects both the higher sales price and the lower amount owing due to these payments.

11 - OPINION & ORDER

Defendant breached its duties of good faith and fair dealing because Defendant insisted "on being paid for the erroneous amount listed in the September 7, 2017 payoff request." Compl. ¶ 19. Plaintiffs add that because of Defendant's "persistence," Plaintiffs were forced to continue paying on the loan that it wanted to close in September 2017. *Id.* ¶ 21. Further, they allege that during the course of communications they had with Defendant in September and October 2017, Defendant "admitted that the foreclosure documents" it provided "showed that there were no foreclosure related fees owed." *Id.* ¶ 22. Due to these alleged breaches of the duty of good faith and fair dealing, Plaintiffs allege they have incurred economic damages in the amount of $71,765.53, the same amount as alleged in support of their breach of contract claim.

For the reasons explained above, Plaintiffs cannot demonstrate that a breach of any implied duty by Defendant caused them harm. They cannot articulate the basis for the claimed sum of more than $70,000 in damages. They themselves put off the sale to the first buyers. They made more money on the sale to the second buyers than they would have by selling to the first buyers. Finally, Plaintiffs do not identify the document in which Defendant allegedly admitted that no foreclosure-related fees were owed. However, as best this Court can determine, Plaintiffs are relying on Exhibit 4 to the Complaint in which a foreclosure specialist from Defendant's predecessor, responding to a colleague's email request for a statement of current costs and fees, stated that because the file had not yet been referred to the foreclosure attorney, there were no fees or costs at that time. Compl., Ex. 4, ECF 1-1 at 21. The problem with Plaintiffs' reliance on this document is that it is dated December 2013, one year before the initiation of the late-2014 foreclosure against the Morse Property. *Id.* Thus, it does not show that Defendant was

attempting to collect on fees that were not owed.

III. RESPA Claims

Plaintiffs' third claim for relief alleges a RESPA violation. Among other provisions, RESPA prescribes certain duties for loan servicers upon receipt of a "qualified written request" from a buyer. 12 U.S.C. § 2605(e). One of those duties addresses the provision of information to a consumer reporting agency as defined in 15 U.S.C. § 1681a. 12 U.S.C. § 2605(e)(3). Specifically,

> [d]uring the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency[.]

*Id.*

Plaintiffs allege that they made a formal dispute resolution request of Defendant on October 6, 2017. Compl. ¶ 25. Upon information and belief, Plaintiffs allege that Defendant violated section 2605(e)(3) by making negative reports to credit agencies during the sixty-day dispute resolution period. *Id.* ¶ 26. They allege they have incurred damages exceeding $10,000. *Id.* ¶ 27.

In a fourth claim for relief, entitled "Injury to Credit," Plaintiffs allege that due to the RESPA violation, their credit was injured, causing them to suffer $50,000 in damages. *Id.* ¶¶ 29, 30. In the Complaint, Plaintiffs provide no additional allegations regarding the claimed amounts of $10,000 or $50,000 in damages allegedly caused by Defendant's alleged negative report to a credit agency between October 7, 2017 and December 7, 2017.

13 - OPINION & ORDER

Defendant moves for summary judgment on the RESPA claims because no evidence supports Plaintiffs' claim that Defendant made any negative reports after October 6, 2017. Additionally, Defendant contends that Plaintiffs have no evidence that they were personally damaged by any alleged RESPA violation because during deposition, Jeffrey Slusher admitted that the alleged injury to credit was suffered by a corporate entity owned by Plaintiffs and not by Plaintiffs individually.

In his deposition, Jeffrey Slusher testified that he had no facts to establish that Defendant made reports to anyone after October 2017. J. Slusher Dep. 48:2-8. He indicated he would have to look at his office to see if there was another credit report for him to review. *Id.* at 48:4-5. In describing what the $10,000 damages claim consisted of, he stated that it was "economic damages is on the credit report to borrow money for my business." *Id.* at 48:14-22. In a follow-up question, counsel for Defendant referred to Plaintiffs' allegation that they were entitled to damages because Defendant improperly made a negative credit report after October 2017. *Id.* at 49:8-12. She asked again how Plaintiffs were entitled to that amount. *Id.* at 49:10-12. In response, Jeffery Slusher conceded that he was "not sure where the 2017 came up. My intention is [Defendant's] negative reporting *before* 2017." *Id.* at 49:13-14 (emphasis added).

In his Declaration, Jeffrey Slusher refers to credit reports being attached as "Attachment 3." J. Slusher Decl. ¶ 8. No documents submitted by Plaintiffs with the Declaration are marked. My review of the documents submitted with the Declaration shows no credit reports. Regardless, Jeffrey Slusher's Declaration, which describes the contents of the reportedly attached credit reports, does not create an issue of fact. Jeffrey Slusher states that the attached credit reports

show a foreclosure and delinquency reported to his personal credit reports after the Loan Modification Agreement was entered in October 2015. *Id.* The communication sent by Plaintiffs to Defendant which triggers the sixty-day time period in § 2605(3)(3) was October 7, 2017. Thus, Plaintiffs must show that any negative report made by Defendant to a credit agency occurred after, and within sixty days of, that date. That Defendant made a report after October 2015 does not establish a report made after October 7, 2017.

Because Plaintiffs fail to create an issue of fact on the RESPA claims, I grant summary judgment to Defendant on Plaintiffs' third and fourth claims for relief.

IV. Fraud Claim

Plaintiffs allege that Defendant made erroneous representations in the September 7, 2017 payoff statement and after having been informed by Plaintiffs that these representations were erroneous, Defendant persisted in making them. Compl. ¶¶ 32, 33. Plaintiffs allege that they had no choice but to rely on these material misrepresentations to make the payoff in the "erroneously demanded amount." *Id.* ¶ 33. They allege they suffered damages of $71,765.53. *Id.* ¶ 34.

The elements of a fraud claim under Oregon law are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

*Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1345–46 (D. Or. 2014) (citing *Webb v. Clark*, 274 Or. 387, 391, 546 P.2d 1078 (1976); *Johnsen v. Mel–Ken Motors*, 134 Or. App. 81, 89, 894 P.2d 540 (1995)), 716 F. App'x 729 (9th Cir. 2018). Additionally, each element must be

proved by clear and convincing evidence. *Webb*, 374 Or. at 391, 546 P.2d at 1080.

During Jeffery Slusher's deposition, he was asked what false statement Defendant made to him to support the fraud claim. J. Slusher Dep. 50:21-22. In response, he said: "The only thing I can think of is about the foreclosure on the credit report." *Id.* at 50:23-24. As Defendant notes, there is no dispute that Defendant initiated foreclosure proceedings against the Morse Property in late 2014 or early 2015. Thus, any statement on a credit report regarding the foreclosure was not false. Plaintiffs offer no evidence to the contrary.

To the extent the fraud claim is based on the September 7, 2017 payoff statement as alleged in the Complaint, Defendant argue that Plaintiffs have no evidence showing: (1) that the payoff statement was false; (2) that Defendant believed the payoff statement was false; (3) that Plaintiffs were not ignorant of the alleged falsity because they believed it was inaccurate; (4) Plaintiffs' reliance; (5) a right to rely; and (6) any injury. I agree with Defendant. Plaintiffs' utter failure to respond to the argument regarding the viability of this claim indicates their abandonment of it. Additionally, no evidence in the regard creates an issue of fact on several of the elements of the claim.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

16 - OPINION & ORDER

CONCLUSION

Defendant's motion for summary judgment [9] is granted.

IT IS SO ORDERED.

Dated this 27 day of Sept., 2018

_____
Marco A. Hernandez
United States District Judge